No. 5, 17-0267. Council ready? Yes. Okay, you may proceed. Your Honors. Counsel. May it please the Court. Before you get started, I have a question, counsel. Yes, sir. In the brief, you mentioned that Judge Rudolph made a finding of no just reason for delay, and you cite page 411 of the common law record, which contains your motion for that finding and not a court order. Where in the record on appeal is Judge Rudolph's written order? Your Honor, I don't believe it's there on appeal. I think there's a miscommunication or an error at the trial court level, and that document had never been received by this court. Well, the Court, if you can locate that, the Court would entertain a motion to supplement the record, and we have, I do have another question. Has there been a final judgment on the issue of attorney's fees? Yes, Your Honor. That has been adjudicated, and I believe Judge McGlynn in Sinclair County has issued an order denying attorney's fees. And that's in the record? Your Honor, I'm not sure. I don't believe that is in the record. I'm sorry, can you repeat that? Can you cite to that in the record? I don't believe it is in the record, so I don't believe I can cite to it. Well, how can there be a final judgment on attorney's fees if there's no record? I guess I'm confused by your question, Your Honor. Are you asking whether or not there's been a written order that has been included in the record, or whether there's just been an order at all? Well, if there's an order, it would be in the record, wouldn't it? It would be in the circuit court record, yes. Can you locate that for me? Currently? With me? No. I can supplement the record if necessary. Well, the Court would entertain a motion to that effect, but you would have to, you would also give your opponent an opportunity to reply. You may proceed with your argument. Thank you, Your Honor. Your Honor, the appeal before you today is an appeal from a motion granting partial summary judgment on a breach of contract claim. The underlying issue here was that there was a settlement agreement executed between the parties, and as part of that agreement, there was a nondisparagement clause. The defendant in this case appeared on a local television station in St. Louis discussing the transgender community. In the course of that discussion, it was reported that she was fired. Under the terms of the agreement, she was not fired, she resigned, and Mike Lyon, InternetWyand Spirits took that as a disparagement of its business, and hence filed a suit for breach of contract. The appeal here today is on the grounds that InternetWyand Spirits believes that there are material issues of fact that remain, and that the trial court erred in granting the defendant's motion for partial summary judgment because of those material facts still existing. So the relief that we are asking for today is a reversal of that decision and a remand back to the trial court. Summary judgment, as you are all well aware, is a drastic measure to be taken, and it is one, in a summary judgment, the purpose of it is not to try an issue of fact, but to determine if one exists. And there's already attention here that there are issues of fact that do exist. In regards to the element of breach, InternetWyand Spirits has claimed that the material issue of fact here is that the defendant, Jimmy Heilman, had informed the reporter, Mandy Murphy, that she was fired, which was a false statement. And that false statement was in turn reported in the news report to the viewing audience, whoever that may be. That still remains an issue, whether or not Ms. Heilman reported that falsely to the reporter, Mandy Murphy. What is not an issue is the fact that Ms. Murphy, the reporter, reported on television that Ms. Heilman was fired. That is undisputed. From that undisputed fact, the reasonable inference can be drawn that Ms. Heilman informed Ms. Murphy that she had been fired. There's a reasonable inference to be made because Ms. Heilman was the one who knew that she had not been fired but had resigned. And Ms. Murphy would not have known otherwise unless Ms. Heilman had told her. So in that regard, we believe that there is an issue of material fact, and that has been pled in InternetWyand Spirits' second amended complaint. They have pled that under this count of breach, that Ms. Heilman falsely reported that she had been fired. What was your client's name mentioned in the interview? No, Your Honor. My client's name was never mentioned expressly in the interview itself. It is our position that because of Ms. Heilman's status in the industry, in the Wyand Spirits industry, that her presence would have been associated with my client and that her appearance on that television program would have been associated with my client. So when she says that she was fired, it is our belief and our contention that those who heard that and those who knew her in the community would have associated her being fired from my client's business, InternetWyand Spirits. Summary judgment is not appropriate. In situations where a reasonable inference can be drawn, a reasonable person could draw different inferences from facts contained in the record. Contained in this record is the fact that Ms. Murphy said Ms. Heilman was fired. A reasonable person, which I believe myself to be, I believe my client to be, drew the inference that Ms. Heilman reported that to Ms. Murphy. That Ms. Murphy's source of knowledge that Ms. Heilman had been fired was Ms. Heilman's statement to her that she had been fired. Hence, we believe there is an issue of material fact regarding whether or not Ms. Heilman had expressed or had reported falsely that she had been fired from InternetWyand Spirits. Secondly, we believe there is an issue of fact regarding causation. Whether Ms. Heilman's statements, as conveyed by Ms. Murphy, caused lost profits for InternetWyand Spirits is also an issue of fact here. The fact that InternetWyand Spirits lost profits is not the only evidence InternetWyand Spirits produced to show that there has been a loss. What is disputed is whether the breach, Ms. Heilman's false reporting of the end of her employment, her separation, as a firing rather than a resignation, caused those lost profits. InternetWyand Spirits provided evidence in the form of profit losses records in the course of discovery, and in those records it reflects a loss for a time period shortly after Ms. Heilman's appearance on the television program. So, by virtue of the temporal proximity of that loss in Ms. Heilman's appearance on television, we are arguing that that is probative of causation. Because she appeared on this television program and because shortly thereafter there was a loss in profits that my client had not experienced in any way prior to that or in any subsequent fiscal year, that that temporal proximity is probative of the causation element. And it can be reasonably inferred that from that time period that is identified in the records that plaintiff's loss is attributed to the television report. Determining whether that evidence is sufficient proof of causation is certainly a question that should be decided after a summary judgment stage, at a trial level hearing, when more evidence can be expounded upon and more evidence can be used to explicate that reason for causation. But here we believe that there's an issue of fact of whether or not that breach caused these lost profits, and we supported that with the temporal proximity and the actual damages that we say we have, or realize that we have incurred. Plaintiff's evidence in this case, Internet of Widened Spirits evidence of those damages, supports and corroborates its claim of causation as well as its claim of damages. The issue of fact here is whether or not the damages that we've shown were caused by Ms. Heilman's false report, her breach of the settlement agreement, which in turn was disseminated amongst the viewing public. And in that regard, we see this as a very simple issue, that in terms of the elements of a breach of contract, we have issues of material fact that remain and have not been resolved, and as such, the trial court had erred in making that ruling by granting a defendant's motion for summary judgment. Is there any other questions that I may answer, Your Honors? Thank you, Counsel. Thank you. I would entertain a motion. Entertain a motion to accept the record. If counsel has something, you're going to have to file that with the court and notify his opponent. We would then So there is no order to enter. May it please the court. Counsel, good morning. My name is Fern Wolfe. I represent the appellee, Jamie Heilman, in this case. I want to address four major points. First, I want to respond to an argument that the appellant IWS made for the first time in its reply brief, which it's not allowed to do, and that this court should reverse because it didn't get a chance to do discovery after we filed our motion for summary judgment. The opposing counsel didn't raise this at oral argument, but it raised it so many times in its reply brief that I feel it's significant and I want to address it here today. Second, I want to respond to IWS's argument that it repeated here today, that it's based on documents that are not anywhere in the summary judgment record or in the appellate court record. And third and fourth, I want to respond to the substantive arguments, causation and breach of contract. First, I want to respond to the arguments that IWS made in its reply brief six times, that this court should reverse because IWS didn't get a chance to conduct discovery after Jamie Heilman moved for summary judgment. IWS waived this argument. It didn't raise it as a point on appeal in its opening brief, and it didn't file a 191B affidavit at the trial court level. It never claimed to Judge Lachine that it didn't have a chance to do discovery, that under 191B that it needed some affidavits, that it was unable to procure because of hostility of witnesses. So every time that it says in its reply brief for the first time in this litigation at the Court of Appeals that it didn't have a chance to do discovery, that's just not accurate. It never took advantage of the procedure that is in place under 191B to ask Judge Lachine to engage in discovery while the case was still before him. In fact, we filed the motion for summary judgment, I think it was something like May 2nd of 2017. They filed according to the record on appeal. They nailed in their opposition within nine days, did nothing in those nine days to try to seek some relief from the trial court. There was no briefing schedule. The court didn't even hear the argument was not set until the end of June, and so nothing happened in between. At one point in this reply brief, there's a suggestion that there was a sanction order in place. At the time, there wasn't. What had happened was there had been a previous sanction order in place because of discovery misconduct by IWS, but by that time, the judge had said, let's wait to do any more discovery until there's a new complaint on file. How can you do discovery when there's not even a complaint on file? So let's not do any more discovery just now. But once they filed the Second Amendment complaint, we could have easily, they could have easily just asked the court for leave to do discovery if they needed it. And that leads me really to the next thing, which is the financial documents. It's completely inconsistent with the claim that they didn't have a chance to do discovery. And in the very same paragraph where they say they didn't have a chance to do discovery, they say that they actually did provide documents to Judge Lechine on which he should have based his causation decision, and that is these financial documents that they claim prove causation. Well, first of all, and I'll get to that next, the financial documents don't prove causation, but besides that, the documents aren't in the record. IWS admits in its reply brief that these financial documents are not physically in the record. Well, there is no way that documents can be in the record other than physically. They are not there. IWS describes these documents. It describes what it claims is in these documents, and then at some point, it says that the documents are not in the record. At some point, it alludes to, and it's sort of strange, I've never seen this before, but when in my brief, I said, you know, I asked this court to strike all the references to these documents that aren't in the record. So IWS said, well, there's a reference to these documents, and what IWS did is it cited to an exhibit to an unrelated motion for sanctions. Well, there's a reference to these documents, and what IWS did is it cited to an completely unrelated motion for sanctions where I attached a partial response to a motion to compel where on the same page as the related response to the motion to compel, IWS happened to mention the base stamp numbers that it was talking about, and that's what it claims are the documents. There are no documents. There's just a listing of some base stamp numbers, and they say that they're going to be producing some financial documents, but there are no documents. So that motion for sanctions had to do with IWS not telling us that it had won one store of the year at the same time that it was claiming that its reputation was damaged by a client. That's what that motion for sanctions was about. It wasn't about lost profits. They just claimed financial distress in really what amounts to hearsay. Okay. So that's the, those are the first two points that I wanted to talk about. The third point that I wanted to talk about actually has to do with... Before you get to the third point, was Judge Lachine the judge that entered the final order? Not on attorney's fees. He had passed away by then, but he entered the summary judgment order. Would you answer my two questions? Yes. Okay. There was a final, there was a judgment on attorney's fees. I lost, and I don't remember who the judge was. We kept getting balanced after Judge Lachine passed away. So a judge did deny our motion for attorney's fees, and I don't remember. Your other question was about the final order, no just reason for delay. Someone did sign that, and I don't remember. So you're saying that there is one in the record? It's not in the record on appeal. I didn't see it in the record that was submitted to you on, to this court on appeal. I think the record on appeal was submitted well ahead of the time that that court, that that got signed. But I know I didn't see it in the record on appeal. I don't remember. Okay. Okay. Thank you. I saw one, but I don't think the appellant ever supplemented the record with that order. Okay. Thank you. And I have no objection to that being supplemented. If they file a motion, I can prematurely say I don't object. So on the evidence of causation, IWS has no evidence of causation. An essential element of any breach of contract claim is proof that the breach caused the claim damages. IWS's claim damages in this case is that they lost profits because of Jamie Hyland's appearance on the Fox 2 News report. And IWS, we asked IWS to state all facts on what happened. And IWS did not. And IWS stated the facts on which it based its claim that the breach caused damage to its reputation, because that's what this nondisparagement clause was all about, was a reputational injury. And IWS answered, essentially, and these are part of the appendix to our brief and they're also in the record, that it didn't have any facts. It said after it was sanctioned, in order to give a second answer, it said that George Randle believed the damage has happened. And we asked specifically, whose view of IWS changed as a result of the breach? Same answer. George Randle believed that IWS was damaged. And we asked for each person whose view of IWS changed as a result of the breach, how much did it cost you? That same answer. George Randle believes that the reputation was damaged. We even asked if IWS was aware of any market studies or surveys of attitudes towards the company during this period. And, you know, to see if there was some, you know, expert thing that they might eventually try to come up with, saying there is, you know, some changed view of the company because of what Mandy Murphy said on television, not identifying the company, by the way. And IWS said it wasn't aware of any such surveys, which is, that was the basis for that other motion for sanction. And IWS said no, no surveys. So IWS's position is that it produced evidence of causation to controvert our evidence through its evidence of lost profits. But IWS didn't produce that evidence. It's not in the record. So it claims it had the evidence, but it made a conscious litigation decision not to file the evidence with the court so that the judge could review it. And that we could respond. And that this court, in its de novo review of the record, could have something to look at. So the court has nothing to look at. And the second reason that the court should affirm summary judgment on this element is that lost profits alone don't prove causation. Since lost profits, according to the Illinois Supreme Court in the Midland Hotel case, which is the case on lost profits, and it's cited in our brief, since lost profits are frequently the result of several intersecting causes, it must be shown with a reasonable degree of certainty that the defendant's breach caused a specific portion of the lost profits. So just saying that you lost, with nothing to back it up, $127,000 in two months from the previous year proves nothing. It doesn't prove that what Mandy Murphy said on television caused anything. Because the Midland Hotel case says you have to show some connection to what the breach was. And finally, IWS cannot prove the facts that it alleged in its complaint were the breach of the contract. IWS fixed the issues and controversy in its pleading. Not the ever-changing pleading or ever-changing theory that it's coming up with. And I actually heard a new one today at oral argument. The claim that everyone would have known from her position with the company who Mandy Murphy was talking about. That's a new one. What IWS pleaded in paragraph 25 of its complaint is that Mandy Murphy said that Jamie Heileman was fired from her job at IWS because of transgender discrimination. And we put in evidence that IWS could never prove that. And the evidence is the DVD. Because Mandy Murphy never said IWS. Never said Randalls. And if there ever was any doubt about what IWS was claiming in this lawsuit, they made it very clear. They always claimed that Mandy Murphy said IWS or Randalls on television. So this is directly from their brief to Judge Lachine. And it's at C318 of the record. This is what they said. Defendant Jamie Heileman breached the settlement agreement by falsely reporting to Mandy Murphy that she was fired from her employment with Randalls, which Murphy proceeded to repeat during the television report. They have always claimed that Mandy Murphy said their name on television. And the DVD just shows differently. I urge you to watch it. IWS offered nothing to refute that evidence that Mandy Murphy never said Randalls or IWS on television. So summary judgment on the breach issue was proper. In conclusion, IWS argues that it demonstrated a material issue of fact as to causation with documents that aren't in the record. Judge Lachine didn't have these documents before him and neither does this court in its de novo review of the record. That means that IWS admits that it didn't establish a material issue of fact. IWS argues repeatedly in its reply brief that it didn't have enough to defeat summary judgment when it says it didn't have a chance to do discovery after we filed the motion. A point it waived at the trial court and at this court by not filing a 191B affidavit and by not raising it in its opening brief. This means based on the record before Judge Lachine and based on the record that is properly before you, we ask that you affirm. Thank you. Your Honor, may it please the court. As a preliminary matter, I'd like to at this time make a motion to supplement the record to include the order showing no just delay for the appeal as well as the order denying attorney's suits. That being said, in response to… Okay. How much time do you need? Do you need time to respond? No. Very good. You'll provide that to us and within how long? About 30 days would be okay. Oh. Okay. We can get it in a week, can't we? Yeah.    Oh, I see. So you haven't got a 10-day period. No, we've got a 10-day period. No, we have a 10-day period. Thank you, Your Honor. No, we have a 10 days. Thank you, Your Honor. Your Honor, I'd like to just bring up the fact that in Internet Wine Experience's actual second amendment complaint the pleadings are as such in paragraph 31 of the actual count one, the breach of contract, IWS alleges defendant Heilman materially breached the terms of the settlement agreement by falsely reporting to Mandy Murphy that she was, quote, fired from IWS. The quotation here is that she was fired, and that is a quotation to illustrate that that was the verbatim usage or verbatim verbiage used that we're taking issue with. Not that, not necessarily that Mandy Murphy said that Internet Wine Experience fired Ms. Heilman or that Randall's fired Ms. Heilman, but that Ms. Heilman was fired. And that is the quoted material here to illustrate that direct quotation. Furthermore, in paragraph 34, IWS alleges upon information belief, Fox 2 News' broadcasting of defendant Heilman's firing, which is in quotations again, was a direct result of defendant Heilman reporting to Murphy that IWS fired her for being transgender. Again, the allegation here in the count specifically is stating that Internet Wine Experience is making the allegation that the breach here is Ms. Heilman's false reporting to Ms. Murphy, not necessarily Ms. Murphy stating that IWS fired Ms. Heilman. And furthermore, in paragraph 36 of the Second Amendment complaint, IWS alleges the untrue statement that defendant Heilman was, quote, fired was directly and indirectly disseminated to parties outside the settlement agreement by defendant Heilman. And throughout the course of the, throughout the course of that pleading, the word fired, fired or firing has been placed in quotations to illustrate that is a direct, that is a quotation used or it is a term used by Ms. Murphy to demonstrate the separation of employment. So Ms. Murphy never stated rainbows or Internet Wine Experience in that report. What she did say, as illustrated in these pleadings, is that Ms. Heilman was fired. And that is employment material. Where she was fired from was Internet Wine Experience. And that was known to Ms. Heilman, that was known to my client, Internet Wine Experience, and would not have been known to Ms. Murphy but for Ms. Heilman telling her that. In terms of the, in terms of the issue counsel brought up regarding the sanction order and the state of discovery, the court ordered on November 2, 2016, in a motion for sanctions, that the plaintiff is not granted leave to amend counts two and three and the parties will take no further action on this case, including discovery. So it is our understanding at that time of November 2, 2016, discovery had been stayed. In the subsequent order on March 7, 2017, in response to the defendant's second motion for sanctions, the court ordered that the parties are not to engage in further discovery until the defendant files an answer to the second amendment complaint. There has never been an answer to the second amendment complaint and therefore discovery was never lifted. Despite the fact that Internet Wine Experience submitted a second amendment complaint, there was no answer to that complaint which would have lifted that, which would have lifted the stay as ordered by the court. And it is in that fact that Internet Wine Experience contends that it never got the full pursuit of the discovery in order to substantiate for the claims that it believes are evidence as material issues of fact here. With that being said, Internet Wine Experience respectfully asks this court to reverse that partial summary judgment motion and to remand this case for further proceedings in a trial court. Thank you. Thank you counsel. The court will take this matter under advisement and render a decision in due course.